[Civ. No. 12394.  Second Appellate District, Division Two.—February 5, 1940.]

BEN BARD, Special Administrator, etc., Appellant, v. L. E. KENT, Respondent.

Jerome H. Kann for Appellant.

Pacht, Pelton, Warne & Black for Respondent.

MOORE, P. J.—Ruth Roland married the defendant herein in 1917 and divorced him in 1919. Notwithstanding said incident, the defendant was actively engaged as her agent from 1911 until her decease in 1937.

Decedent was the owner of a large tract of land which, by virtue of her conveyance and indenture in 1924, constituted the *corpus* of a subdivision trust. Simultaneous with the creation of said trust, decedent employed defendant as her agent to sell the said tract and to act as her attorney in fact in all matters pertaining to said trust. As compensation, she agreed to pay defendant a commission of ten per cent of the selling price of the parcels of the subdivision, payable out of the initial payments on the purchase prices of the lots as sold, which were to be no less than twenty per cent of the list prices as set forth in said contract of employment. In addition to said commission, for acting as decedent's attorney in fact, defendant was to receive an additional compensation of two and one-half per cent of the selling prices. The enterprise was evidently a success for the lots were all sold to other parties except those hereinafter mentioned. Upon the qualification of the plaintiff as special administrator of the estate of said decedent, he discovered that in 1925 lots 3 and 4 of said tract had been sold to a Mrs. Sheppard but that the contracts of sale had been immediately assigned to the defendant.

Upon the hypothesis that defendant was acting at all times in a fiduciary relation to decedent in the sales and disposition of said land, from his employment until 1929, and that he had concealed the facts from decedent, plaintiff instituted this action and alleged two causes, in substance as follows: (1) That, without disclosing the facts to decedent, the defendant notified the trustee that there was due him a commission of $20,984.38 for the sale of lots A, B and C, and that said trustee should apply $17,080 of said sum to the purchase price of said lots 3 and 4, and to credit his account with the balance; that the said trustee followed the instructions of defendant, credited him with $20,984.38, conveyed to him said lots 3 and 4, and charged his account with the said $17,080, leaving to his credit the balance; that in truth defendant was entitled to no commission upon said lots A, B and C; (2) his second cause of action was that the said $17,080 applied to

the purchase price of said lots 3 and 4 was the original price fixed at the time of the execution of the trust indenture; that at the time they were conveyed to defendant in 1929 their value had increased to $28,080; that defendant should restore $11,000, the difference between the fixed and said appreciated value.

The answer denied the fraud alleged; pleaded the statute of limitations and alleged decedent's complete knowledge of all acts done by defendant with reference to said commissions on the sales of said lots A, B and C and of the conveyance by the trustee to defendant of said lots 3 and 4, and that said acts were the consummation of an oral agreement between decedent and defendant in 1929.

For sufficient cause, the court granted a nonsuit as to the second cause of action. Upon ample evidence, the trial court found all the facts as alleged by the defendant and concluded that plaintiff was barred by the statute of limitations and was estopped by the acts and conduct of decedent from asserting the claim set forth in the first cause of action. From judgment of nonsuit and the judgment entered upon said findings, the plaintiff appeals on the following propositions: (1) That the real estate broker is not entitled to commissions upon the list prices of lots, constituting the residue of a subdivision trust estate, where such lots are reconveyed to the trustor, and where the brokerage contract provided for the commissions to be payable out of the initial payments of the purchasers; (2) parol evidence is incompetent to contradict a written instrument; (3) that a nonsuit is improperly ordered where the law presumes the transaction fraudulent; (4) that estoppel and limitation are not available to an agent against his principal when the principal had no knowledge of all the facts and the agent had suffered no detriment.

Prior to February, 1929, said trust was in a condition to be closed. Decedent and defendant oftentimes had discussed plans for its termination. On February 7, 1929, decedent and defendant orally agreed that said lots A, B and C should be conveyed to decedent; that defendant should be allowed his stipulated commissions of $20,984.38 the same as though an actual sale had been made to a stranger; that $17,080 thereof should be applied to the full purchase price of said lots 3 and 4 which should be conveyed to defendant. Pursuant to said oral agreement, the trustee was authorized to and did convey

said lots A, B and C to decedent and said lots 3 and 4 to defendant. After effectuating said transfers, defendant took possession of said lots 3 and 4 and made improvements thereon. A real estate office building was removed on to lot 3 and thereafter decedent paid defendant $100 per month as rental for the use of a portion of said office building. He constructed a two-story building upon lot 4 in 1936 with the approval and in the view of decedent. Prior to said construction, defendant had applied to the city of Los Angeles for a variance of the zoning restrictions upon said lots. In his application he asserted that he was the owner, and decedent, as an adjoining property owner, signed said application on the same page bearing the signature of defendant. During the life of the trust, from 1924 to 1929, the trustee forwarded periodical statements of the condition of the trust to decedent, one of which statements disclosed the transfer of said lots A, B and C to decedent and the credit to defendant of his usual commission provided by his contract of employment. All of the taxes and assessments upon said lots 3 and 4 were paid by defendant after 1925.

■ As to the first contention of the plaintiff, it is answered by the facts which disclose that the original agreement, providing for the defendant's commissions, was disposed of by an executed oral agreement. The parol evidence rule has no application where the matters, with reference to which the writing made provision, have been disposed of by an executed oral agreement. That rule was conceived for the purpose of protecting the integrity of executory writings. Any contract in writing may be altered by an executed oral agreement. (Civ. Code, sec. 1698.) The oral agreement of decedent and defendant in 1929 providing for his commissions on said lots A, B and C and for the conveyance to him of said lots 3 and 4 was fully executed in every respect. It is binding upon them and their successors and the parol evidence rule is inapplicable. (*Fuller* v. *Mann,* 119 Cal. App. 568 [6 Pac. (2d) 999]; *Kline Norton Co.* v. *Cohen,* 107 Cal. App. 325 [290 Pac. 613].)

■ The presumption of fraud urged as a basis for the $11,000 damages wholly failed in the face of satisfactory evidence to the contrary. Plaintiff's insistence that the defendant failed to disclose that lots 3 and 4 had appreciated in value at the time of said oral agreement in 1929 is likewise

164

disposed of by the facts which were found to be true. The court having found that an oral agreement was made and executed for the transfer of said lots 3 and 4 to defendant at the price agreed upon, the claim for damages was without any foundation and the judgment of nonsuit was necessarily entered. There was no basis for applying said presumption after decedent and defendant had consummated their agreement for the transfers of said lots and for the allowance of said commission.

The other points are disposed of by the foregoing.

The judgments are affirmed.

Wood, J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 29, 1940.