[Civ. No. 14674. Second Dist., Div. One. Mar. 2, 1945.]

Estate of LOUIS W. MORRISON, Deceased. MORRISON MORRISON, Individually and as Executor, etc., Appellant, v. ARTHUR V. KAUFMAN et al., Respondents.

J. Russell Myers for Appellant.

Arthur V. Kaufman and Harry H. Licker, in pro per., for Respondents.

Doran, J.—This is an appeal from an order allowing respondents the sum of $5,400 for extraordinary legal services. It appears that Louis W. Morrison, the father of appellant, died testate on March 26, 1935, and that the appellant became the executor of his father's will. Until December, 1939, the executor was represented by the law firm of Golden and Kaufman, and thereafter by Arthur V. Kaufman who continued as sole attorney for the executor until in September, 1942, when Mr. Kaufman entered the Army, at which time Harry H. Licker was associated as attorney for the estate. Assets in the estate were officially appraised at $478,459.84, and the final appraisal was $354,126.51, the assets consisting of property located in California and in New York.

On May 6, 1936, the following document was signed and delivered to the executor, and it is upon this written instrument that the appellant relies in objecting to the allowance of extraordinary legal fees:

"Received of Morrison Morrison the sum of Six Thousand Dollars ($6,000.00), One Thousand Dollars ($1,000.00) of

which has heretofore been received, and Five Thousand Dollars ($5,000.00), receipt of which is acknowledged herewith.

"Said sum of Six Thousand Dollars ($6,000.00) is received by us as full settlement of any and all claims, which we may have against Morrison Morrison either individually, or as executor of the Estate of Louis W. Morrison, deceased.

"For said sum so received, we agree to complete the probate of the Estate of Louis W. Morrison, deceased, without any further charge whatsoever. It is understood, however, that in the event that we shall be engaged in a contest with reference to inheritance taxes, then and in that event, we shall be paid a reasonable percentage of the amount which we save from the taxes now computed against said Estate, said percentage which we are to receive to be mutually agreed upon.

Dated: May 6th, 1936.

> GOLDEN AND KAUFMAN,
> By A. V. KAUFMAN,
> By MILTON M. GOLDEN."

Subsequently, on or about March 19, 1943, respondents filed their petition for allowance of fees for extraordinary services to which appellant filed an answer setting up the agreement of May 6, 1936, and denying the performance of any extraordinary service or any subsequent oral agreement on his part to pay any additional attorney fees. Thereafter this petition was withdrawn and a second petition for extraordinary fees was filed, identical with the first except that it set forth the agreement of May 6, and alleged an indebtedness of $2,000 due from appellant personally. It was stipulated that the answer to the first petition would be deemed an answer to the second petition. Respondents' petition sets forth, in extenso, the performance of considerable amount of legal work including contested tax claims, litigation, and sales of real estate, specifying 34 court appearances, a time expenditure of 232 days, and alleging a saving to the estate of $65,000. On November 19, 1943, after a four-day hearing at which appellant and respondents testified at length, the trial court allowed the sum of $5,400 for extraordinary legal services, apportioning the amount as follows:

"I.    United States Government Taxes.........$2,100.00
 II.    New York State Taxes...................    00.00
III.    Taxes to the State of California..........  1,200.00

|  |  |  |
|---|---|---|
| IV. | Claim of County of Los Angeles | 750.00 |
| V. | Claim of Rosenblatt and Jeffe | 750.00 |
| VI. | Sales of Real Estate | |
|  | (a) in California | 600.00 |
|  | (b) in New York | 00.00 |
| VII. | Stocks, Bonds and Securities | 00.00 |
| VIII. | Accounts, Suspension and Restoration of Executor's Powers | 00.00 |

Total ............................$5,400.00''

In reference to the executor's contention that any claim for extraordinary attorney fees was barred by the written instrument of May 6, 1936, the trial court found as follows:

"8. That immediately prior to May 6, 1936, Morrison Morrison, the executor herein, was personally indebted to the firm of Golden and Kaufman in the amount of $2000.00 for legal services rendered to him individually; that at that time Morrison Morrison, as executor of this estate, stated to Arthur V. Kaufman, one of the petitioners herein, he wanted them to close the administration of the estate immediately. That on the basis of said request, and the condition that there would be no further services required of said firm of Golden and Kaufman other than the routine closing of the estate and the handling of the tax matters incidental thereto, the firm of Golden and Kaufman delivered the following writing to Morrison Morrison individually and as executor of the above estate'': (setting forth the writing of May 6, 1936, hereinbefore mentioned).

The trial court further found in substance that the $6,000 paid by the executor under the terms of such writing should be allocated as follows: $2,000 for legal services rendered to Morrison Morrison personally, and $4,000 for ordinary legal services to Morrison Morrison as executor of the estate; that the statutory commissions based on the appraised value of the estate at the time of the execution of said writing amounted to $5,614.60; that thereafter the executor advised petitioner Kaufman "that he had changed his mind about closing the estate immediately, and wanted said petitioner to perform such services as would be required to dispose of the estate's real property.'' That thereupon, said petitioner advised said executor that such services were not contemplated when the

writing of May 6, 1936, was delivered to the executor, and further, that the requested services, and any services other than the ordinary services necessary to close the estate, would constitute extraordinary services, which were not contemplated by, or covered in, the said writing, and compensation for which would have to be fixed by the probate court. That the executor then orally agreed with the said petitioner that said petitioner was entitled to additional compensation for any extraordinary services to be rendered by him thereafter, including the sale of said real property. That pursuant to said oral agreement, petitioners performed extraordinary services in reference to the matters hereinbefore set forth and of the reasonable value specified in the order.

Appellant denied the making of the alleged subsequent oral agreement to pay petitioners any additional fee and has taken the position that no extraordinary services were performed. The finding to the contrary, however, finds support in the testimony of petitioner Arthur V. Kaufman which discloses the performance of extensive legal service, many court appearances, contested litigation, including an appeal to the Supreme Court of California, contested tax claims, and sales of real estate. There is evidence of the fact that these services were performed with the knowledge of the executor, that they covered a period of several years, and that the matter of extra compensation was several times discussed. Attorney Kaufman testified that there were several similar conversations, for example, in August and September, 1936, when he told Morrison that services other than the routine closing of the estate, would have to be paid for, to which the executor replied, ''Don't worry about it. I will take care of that as soon as we get everything straightened up and we reach a point I can pay it.'' There was a decided conflict in the testimony as to this and other matters, but the record discloses substantial evidence to support the findings of the trial court and the allowance of fees for extraordinary legal services.

It is appellant's contention that the facts establish— ''First: That the matter of allowance of attorney fees for extraordinary services was not properly before the Court, the respondents and the executor having entered into a written contract fixing and determining the amount of attorney's fees to be paid; and Second: Even if the petition for allowance of extraordinary services was properly before the Court,

the facts and circumstances and the Order made clearly show an abuse of discretion.''

As pointed out by respondents, however, it is settled law in California that the estate of the deceased is in the custody and control of the probate court, and it is within its exclusive province to determine the validity and amount of all claims made against the estate. Thus in *Dobbins* v. *Title Guaranty & Trust Co.*, 22 Cal.2d 64 [136 P.2d 572] it was held that the court had jurisdiction in the matter of apportionment of extra compensation between coexecutors notwithstanding a contract between them, and that ''Under various circumstances the probate court may determine the validity *and effect* [italics added] of contracts when ancilliary to a proper judgment by it.'' (See, also, *Estate of De Barry*, 43 Cal.App.2d 715 [111 P.2d 728], and *Estate of Hughes*, 3 Cal. App.2d 551 [40 P.2d 295].) Section 910 of the Probate Code provides that attorneys for executors shall be allowed such amount as the court ''may deem just and reasonable for extraordinary fees,'' and in the *Estate of Neff*, 56 Cal.App. 2d 728, 732 [133 P.2d 413], the rule stated in many previous decisions was followed, namely, that, ''In making its order fixing such fees, the court has a large discretion, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal, only in the face of a plain abuse of discretion.''.

While it is true that the parties had entered into a written contract concerning attorney fees, containing the statement that respondents would complete the probate of this estate ''without any further charge whatsoever,'' nevertheless, it is well settled that any contract in writing may be modified by an executed oral agreement. (Civ. Code, §1698.) Such a contract as modified is valid and enforceable, and evidence in reference thereto does not violate the parol evidence rule. (*Bard* v. *Kent*, 37 Cal.App.2d 160 [99 P.2d 308].) In *Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25] this question was before the Supreme Court in reference to a written contract covering the employment of an attorney, and a subsequent modification thereof. The court there said: ''If thereafter the relations of plaintiff and Miller and Lux were governed by such oral agreement, and its object was fully accomplished, the agreement became executed and worked a modification of the original contract of employ-

ment." The court also held that in an action to recover attorney fees where there is a material conflict in the evidence, findings which are based upon reasonable inferences drawn from the facts proved, will not be disturbed on appeal.

Appellant's contention that the trial court took into account alleged improper items in connection with the order for extraordinary services, and, which, it is argued, amounted to an abuse of discretion, cannot be upheld.

For the foregoing reasons, the order appealed from is therefore affirmed.

York, P. J., and White, J., concurred.